WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert J. Herndon, et al., ) | No. cv-08-928-PHX-ROS |
| ) | |
| Plaintiffs, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| American Family Home Insurance Co., et) | |
| al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is Plaintiffs' Motion to Dismiss and Defendant's Motion to Compel Appraisal, Appoint Umpire, and Stay Action. The dispute between the parties centers around whether the present action should be stayed pending appraisal proceedings regarding the amount of loss suffered by the Plaintiffs in their former residence. For the reasons stated herein, both motions shall be granted.

## I. Plaintiff's Motion to Dismiss

Plaintiff's Motion to Dismiss argues that Defendant's counterclaim to compel appraisal is improper and that appraisal can only be compelled through a Motion to Compel Appraisal. Defendant makes no arguments regarding the substance of Plaintiff's Motion to Dismiss, instead filing a Cross-Motion to Compel Appraisal, Appoint Umpire, and Stay Action. Because of Defendant's lack of response and because the existence of this Motion makes the counterclaim in question rather irrelevant, Plaintiff's Motion shall be granted and the question of arbitration considered through Defendant's Motion.

II. Defendant's Motion to Compel Appraisal

Defendant motions to require appraisal as mandated by the insurance contract between the parties, which reads, in part:

> a.   If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.
>
> b.   The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located.
>
> c.   The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Arizona courts treat appraisal as "analogous to arbitration" and apply the "principles of arbitration" to proceedings involving appraisal. Meineke v. Twin City Fire Insurance Co., 892 P.2d 1365, 1369 (Ariz. Ct. App. 1995); Ori v. Am. Family Mut. Ins. Co., No. CV-05-697, 2005 U.S. Dist. Lexis 28025 at *6 (D. Ariz. 2005).

The Federal Arbitration Act ("FAA") creates "a body of federal substantive law of arbitration, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). The FAA applies to any "written provision in . . . a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. "The FAA includes a broad definition of the term commerce, 9 U.S.C. § 1, and the insurance policy at issue here falls under that definition." Ori, * 5 (citing Wailua Assocs. v. Aetna Cas. & Sur. Co., 904 F.Supp. 1142, 1147 n.2 (D. Haw. 1995) (stating that insurance contracts have long been recognized as involving commerce); Perry v. Thomas, 482 U.S. 483, 490 (1987) (holding FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause")). The insurance policy at issue in Ori is substantively similar to the one at issue here and neither party contends otherwise; the FAA is applicable.

The FAA provides that arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9

- 2 -

1  U.S.C. § 2. The Act also "mandates that district courts *shall* direct the parties to proceed to
2  arbitration on issues as to which an arbitration agreement has been signed." Dean Witter
3  Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). Accordingly,
4  "agreements to arbitrate must be enforced, absent a ground for revocation of the contractual
5  agreement." Id.  Such grounds include "generally applicable contract defenses, such as
6  fraud, duress, or unconscionability." Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681,
7  687 (1996). "Waiver of the arbitration clause is also a possible defense." Ori, at * 7; Moses
8  H. Cone, 460 U.S. at 25.

9  Here, Plaintiffs argue that appraisal has been waived. "A party seeking to prove
10 waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to
11 compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party
12 opposing arbitration resulting from such inconsistent acts." Fisher v. A.G. Becker Paribas
13 Inc., 791 F.2d 691, 694 (9th Cir. 1986). "Because waiver of the right to arbitration is
14 disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." Id.
15 (quoting Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir.
16 1982)). Plaintiffs argue the fact that their home has been foreclosed has made arbitration
17 impractical or impossible, and the fact that Defendant failed to mention this in its Motion has
18 prejudiced Plaintiffs, fulfilling the third criteria for waiver.

19 Plaintiffs do not contest that all three criteria must be met in order for appraisal to be
20 waived. However, they make no argument regarding the second criteria – behavior of
21 Defendant that is inconsistent with the right of arbitration. This alone would be enough to
22 conclude that the claim has not been waived.

23 However, nor have Plaintiffs' demonstrated that they have been prejudiced by
24 Defendant's actions in failing to disclose that their home has been foreclosed upon. Any lack
25 of disclosure on the part of Defendant was easily remedied. Plaintiffs could – and did –
26 disclose it themselves in documents that were read by the Court mere minutes after those
27 submitted by Defendant. Waiver, then, is unavailable.

28

The question might, then, arise as to whether Plaintiffs are due some sort of exception for impossibility. Surely a statutory scheme cannot mandate appraisal where it is impossible. However, Plaintiffs have not made a sufficient showing of impossibility that the Court need address this question. They do provide some evidence as to such, in the form of the Declaration of Plaintiffs' Appraiser Joseph Berger, who states that he must have "the opportunity to physically view the Herndons' home in order to 'independently' evaluate and determine the amount of the Herndons' damages sustained due to the loss in March 2007." Dec. of Berger; Pl. Ex. 2. As the residence is apparently no longer standing, physical access is indeed impossible. However, Defendants point out that Plaintiffs originally requested appraisal on the day their home was foreclosed. Further, James O'Toole, a public insurance adjuster wrote a letter to the mortgagee five months after the foreclosure stating, in part:

> The appraisal process can still go forward. If you wish there is considerable dispute in the value of loss and damage to return the structure to its pre-loss condition . . . . Be advised that my company handles many first party insurance claims and have been through hundreds if not thousands of appraisal proceedings.

O'Toole Letter, attached to Wightman Dec. This indicates that it is still possible to use the appraisal process even in the absence of access to the property. Further, were this case to continue to trial, the finder of fact would still be faced with determining the amount of loss in the absence of direct physical inspection. The difficulty would still exist.

Accordingly, the appraisal process must continue.

### III. Defendant's Motion to Appoint Umpire

Neither party disagrees that this Court ought to appoint an umpire. Defendant throws out a number of names. Plaintiff counter-proposes Phoenix attorney and former Superior Court judge Stephen Scott and Phoenix attorney Steve Copple. Defendant objects to Mr. Copple, but agrees that Mr. Scott "would undoubtedly make an able umpire." Thus, he will be appointed by the Court assuming he agrees to the appointment.

### IV. Defendant's Motion to Stay

The parties agree that the pending civil action in the federal court should be stayed until completion of the appraisal process and entry of an Appraisal Award. Plaintiff,

however, clarifies in its Motion that "all disputed claims under the policy should go to appraisal, including Plaintiffs' contention that they incurred additional living expenses . . . and additional storage expenses as a result of the covered loss." Defendant replies that all matters as to the "amount of loss" should be appraised in one proceeding, but cautions that issues that are purely legal need to remain with this Court.

It does not appear that a conflict exists between the parties on this matter. The appraisal proceeding shall involve the total amount of loss, including additional living expenses and storage expenses. Questions regarding the scope and coverage of the policy that do not lend themselves to appraisal shall remain with this Court.

Accordingly,

**IT IS ORDERED** Defendants' Motion to Compel Arbitration, Motion to Appoint Umpire, and Motion to Stay is **GRANTED**.

**FURTHER ORDERED** Plaintiff's Motion to Dismiss is **GRANTED**.

**FURTHER ORDERED** this case shall be stayed pending appraisal.

**FURTHER ORDERED** Stephen Scott is appointed as umpire to the party's appraisal proceedings if he agrees to the appointment.

**FURTHER ORDERED** counsel for both parties are within ten days to deliver a copy of this Order to Mr. Scott and to inform the Court by written notice 30 days from the date of this Order whether Mr. Scott agrees to the appointment.

**FURTHER ORDERED** the parties are to report to the Court by written notice the profess of the umpire in completing his responsibility on or before **June 26, 2009**.

DATED this 20th day of March, 2009.

Roslyn O. Silver
United States District Judge

- 5 -